IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:03cr159(1) |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| TOUFIC ROUPHAEL, | : | |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT'S ORAL MOTION TO DISMISS ON THE BASIS OF THE STATUTE OF LIMITATIONS; GOVERNMENT'S MOTION FOR PRETRIAL HEARING REGARDING STATUTE OF LIMITATIONS (DOC. #93) OVERRULED AS MOOT; DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT AND INTIMIDATION OF A WITNESS (DOC. #100)

Defendant Toufic Rouphael ("Defendant" or "Rouphael") is charged in the Indictment (Doc. #1) with conspiring with Co-Defendant Richard Keaton ("Keaton") and others to distribute and to possess with intent to distribute more than five kilograms of cocaine and more than one kilogram of heroin, in violation of 21 U.S.C. § 846. The Indictment alleges that the charged conspiracy began in or about February, 1997 (the exact date being unknown), and lasted until December 9, 2003, the date upon which the Indictment was returned.  One of Defendant's primary defenses is his assertion that this prosecution is barred by the applicable

statute of limitations. Therefore, the Government has requested that the Court conduct a pretrial hearing, in accordance with Rule 12(b)(2) of the Federal Rules of Criminal Procedure, to determine whether this prosecution is so barred.[1] See Doc. #93. This Court conducted an oral and evidentiary hearing on Defendant's statute of limitations defense on June 6, 14 and 29, 2005. At the beginning of the first day of that oral and evidentiary hearing, the Defendant orally requested that the Court dismiss the prosecution against him, because it is barred by the statute of limitations. After having obtained extensions of time, the parties have filed their post-hearing memoranda. See Docs. ##105, 106 and 109. Rouphael has also filed a Motion to Dismiss for Prosecutorial Misconduct and Intimidation of a Witness (Doc. #100). The parties have addressed that motion in their post-hearing memoranda. As a means of analysis, the Court will initially rule upon the Defendant's written motion to dismiss based upon alleged prosecutorial misconduct, following which it will turn to his oral motion to dismiss predicated upon his statute of limitations defense.

I. Defendant's Motion to Dismiss for Prosecutorial Misconduct and Intimidation of a Witness (Doc. #100)

In his opening, post-hearing memorandum, Rouphael argues that the Court should dismiss this prosecution, because of the interaction between his witness, Sherman Todd Moss ("Moss"), and two federal officers. According to the

---

[1]Given that it has conducted a three-day oral and evidentiary hearing on the question of whether this prosecution is barred by the applicable statute of limitations, it overrules, as moot, the Government's Motion for Pretrial Hearing Regarding Statute of Limitations (Doc. #93).

Defendant, this interaction constituted the attempted intimidation of a witness by federal agents, in violation of 18 U.S.C. § 1512(b).[2]  Moss testified as a witness on behalf of Rouphael on June 6, 2005, the initial day of the oral and evidentiary hearing.  At that time, Moss testified that he had initially gotten to know the Defendant through the auto auction business and that their business relationship had developed into a friendship.  Moss had also become acquainted with Keaton through that business.  On February 8, 1998, a number of friends, including Rouphael and Keaton, had visited Moss at his residence.[3]  While the Defendant and Keaton were there, Moss had observed them heatedly arguing with one another, although he had not been able to make out the substance of their argument.

The Government called Moss to testify on the second day of the oral and evidentiary hearing, June 14, 2005.  When cross-examined by Defendant's counsel, Moss testified about being served with a subpoena by two federal officers the day before.  Moss indicated that one of the officers did not say much, although his gestures were intimidating to him.  According to Moss, the other federal officer essentially told him that this matter was not worth going to prison over, that he (the officer) believed that Moss had falsely created the calendar upon which he had based his earlier testimony and that Moss needed to recant that earlier testimony.

---

[2]Section 1512(b) provides, in pertinent part:
>    (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>    (1) influence, delay, or prevent the testimony of any person in an official proceeding;
>               *               *               *
>    shall be fined under this title or imprisoned not more than ten years, or both.

[3]Moss testified that, on February 8, 1998, he was in the process of packing in order to move from the Dayton area to Oregon.

Although this encounter scared Moss, it did not cause him to recant his previous testimony.

Rouphael argues that the Court should dismiss the Indictment in order to punish the Government for what he characterizes as "a clear attempt to scare a witness into committing perjury and [testifying] favorably for the Government." Doc. #105 at 14.  Since the Government does not challenge the Defendant's characterization of the confrontation between Moss and federal agents, the Court accepts for present purposes that such an attempt did occur.  Nevertheless, the Court will decline to dismiss this prosecution.

The Supreme Court has held that a District Court is without authority to use its supervisory powers to dismiss an indictment for governmental misconduct that is "not prejudicial to the defendant."  Bank of Nova Scotia v. United States, 487 U.S. at 250, 255 (1987).  In that regard, the Sixth Circuit has noted that, "[e]ven under circumstances where a constitutional right of the defendant has been violated, deliberately or otherwise, the defendant is entitled to the extreme sanction of dismissal of the indictment only where he can prove that he was demonstrably prejudiced by the violation."  United States v. Talbot, 825 F.2d 991, 998 (6th Cir. 1987), cert. denied, 484 U.S. 1042 (1988).  See also, United States v. Ross, 377 F.3d 1097 (9th Cir. 2004).  Herein, the Defendant does not even argue that he suffered prejudice as a result of the confrontation between Moss and the federal officers.  Indeed, such an allegation would have been fruitless, given that Moss had presented the testimony which Rouphael deemed beneficial before that encounter.  Moreover, the confrontation did not cause Moss to recant his

earlier testimony. In addition, Moss was willing to testify about that encounter, thus demonstrating that the officers had failed to intimidate him.

Based upon the foregoing, the Court overrules the Defendant's Motion to Dismiss for Prosecutorial Misconduct and Intimidation of a Witness (Doc. #100).

II. Defendant's Oral Motion to Dismiss Based upon the Statute of Limitations

In ruling upon Defendant's oral motion to dismiss based upon the statute of limitations, the Court begins its analysis by examining the standards which are applicable to pretrial determinations of whether a prosecution is barred by the statute of limitations and the legal principles applicable to the question of whether a prosecution under § 846 is so barred.

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that a party "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." In United States v. Craft, 105 F.3d 1123 (6th Cir. 1997), the Sixth Circuit held that a motion to dismiss is capable of determination without a trial on the general issue, if it raises a question of law, rather than a question of fact on the merits of criminal liability. Id. at 1126. Therein, the Sixth Circuit noted that a criminal defendant's statute of limitations defense is appropriately resolved by way of a motion under Rule 12(b)(2). Id. Accord, United States v. Grimmett, 150 F.3d 958 (8th Cir. 1998) (a pretrial motion to dismiss under Rule 12(b)(2) is the appropriate vehicle for testing whether prosecution for conspiracy to distribute marijuana in violation of § 846 was barred by the statute of limitations). The Craft court explained the method by

which a District Court may rule on a motion to dismiss under Rule 12(b)(2), raising a statute of limitations defense:

> District courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.

105 F.3d at 1126. Herein, the parties agreed that the question of whether the prosecution of Rouphael is barred by the statute of limitations presented a legal question for the Court to resolve, regardless of the number of factual findings which must be made in order to resolve that legal issue. Transcript of June 6, 2005, Evidentiary Hearing (Doc. #95) at 20-21.

The prosecution for conspiracy in violation of 21 U.S.C. § 846 is governed by the five-year statute of limitations contained in 18 U.S.C. § 3282(a).[4] United States v. Brown, 332 F.3d 363, 373 (6th Cir. 2003). The Indictment was returned on December 9, 2003. Therefore, in order to avoid having this prosecution dismissed as barred by the statute of limitations, the Government had the initial burden of showing that the specific conspiracy with which Rouphael has been charged was on-going during the statute of limitations period, in other words, after December 9, 1998. Id. If the conspiracy was on-going, the "presumption of continuity" makes Rouphael criminally responsible for the acts of his co-conspirators, even if he did not personally act on behalf of the conspiracy during

---

[4]Section 3282(a) provides:
>  (a) In general.—Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

It is not otherwise expressly provided by law that a prosecution for conspiracy in violation of § 846 must be prosecuted in a shorter period of time or may be prosecuted in a longer period of time.

- 6 -

the relevant statute of limitations period. Id. To prevail on his statute of limitations defense, Rouphael must "extinguish the presumption of continuity" by showing that he affirmatively withdrew from the conspiracy more than five years before the Indictment was returned. Id. at 374. A defendant is found to have withdrawn from a conspiracy when he has made "a full confession to authorities" or communicated to his co-conspirators "that he has abandoned the enterprise and its goals." Id. Merely ceasing activities on behalf of the conspiracy does not constitute withdrawal. Id.[5] The Sixth Circuit has held that, for purposes of determining whether the statute of limitations has run, the defendant has "the burden of proving withdrawal because it is an affirmative defense." United States v. Lash, 937 F.2d 1077, 1083 (6th Cir.), cert. denied, 502 U.S. 949 (1991). See also, Brown, 332 F.3d at 374; United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied, 454 U.S. 1046 (1981).

As an initial matter, the Court concludes that the Government met its burden of demonstrating that the charged conspiracy continued into the statutory period, i.e., after December 9, 1998. Therefore, a presumption of continuity arises regarding Rouphael, and he can be held criminally responsible for actions occurring

---

[5]In Hyde v. United States, 225 U.S. 347 (1912), the Court explained the foregoing principles in the following manner:
> Having joined in an unlawful scheme, having constituted agents for its performance, scheme and agency to be continuous until full fruition be secured, until he does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law. As the offense has not been terminated or accomplished, he is still offending. And, we think, consciously offending, offending as certainly … as at the first moment of his confederation, and continuously through every moment of its existence…. Until he does withdraw there is conscious offending….

Id. at 369-70.

in the statutory period.  Consequently, the Court must turn to the question of whether the Defendant has met his burden of showing that he withdrew from the conspiracy before December 9, 1998.[6]  For reasons which follow, this Court concludes that the Defendant did not meet his burden of proving that he had withdrawn from the charged conspiracy more than five years before the Indictment was returned on December 9, 2003.  Accordingly, this prosecution is not barred by the applicable statute of limitations, § 3282(a).

During the three-day oral and evidentiary hearing, Rouphael and others testified concerning his activities and agreements pertaining to the distribution of controlled substances.  For instance, there was testimony that, in 1996 and 1997, Rouphael had been involved in efforts to import heroin into the United States from Lebanon with Hamed Qabazard ("Qabazard") and Amed Houssam ("Houssam").  In addition, the Defendant was involved with Keaton and others, including Ronald Stepp ("Stepp") and Joseph Jabra ("Jabra"), in the distribution of cocaine in 1997 and 1998.  Defendant was also involved in activities relating to drug trafficking with Tony Nagam.[7]

---

[6]At the beginning of the first day of the oral and evidentiary hearing, June 6, 2005, the parties agreed that the issue facing the Court was "if and when the Defendant had withdrawn from the charged conspiracy."  Transcript of June 6, 2005, Evidentiary Hearing (Doc. #95) at 3.

[7]During the oral and evidentiary hearing, the Government introduced evidence, primarily through the cross-examination of Rouphael, that he had been involved with Keaton and others in the distribution of Xanax.  If the Government introduced this evidence in an effort to demonstrate that the Defendant's drug dealing activities continued beyond December 9, 1998 (i.e., five years before the return of the Indictment), the Court rejects that effort.  Rouphael is not charged in the Indictment with an offense relating to the distribution of that prescription medication.  The Government has not cited authority supporting the proposition that the statute of limitations does not run on a drug conspiracy with which a

To demonstrate that he had withdrawn from the charged conspiracy, Rouphael testified that he had met Keaton at Moss' residence on February 8, 1998, while the latter was packing in preparation for moving to Oregon. According to the Defendant, he told Keaton at that point that he (Rouphael) would no longer participate in their activities pertaining to the distribution of cocaine, thus communicating to Keaton that he had abandoned the enterprise and its goals.[8] Although the Government presented evidence tending to show that the Defendant's actions in that regard continued after that date,[9] the Court will assume that on February 8, 1998, Rouphael communicated to Keaton that he had abandoned their enterprise and its goals and that, therefore, he had effectively withdrawn from his activities with Keaton pertaining to the distribution of cocaine.[10] The Government argues, nevertheless, that this prosecution is not barred by the statute of limitations. The Government contends that the conspiracy with which Rouphael has been charged encompasses more than merely his activities with Keaton pertaining to the distribution of cocaine. For instance, the Government points out that the Defendant was involved in efforts to import heroin

---

defendant has been charged, merely because he is involved in a different conspiracy relating to the distribution of a different controlled substance, albeit with some of the same co-conspirators.

[8]The Defendant did not present evidence that he had ever made a full confession to authorities. Therefore, he did not establish that means of withdrawal.

[9]For instance, the Government introduced evidence of the Defendant's conversations with Abed Bagabadi in 2002, which could demonstrate that he (Rouphael) continued to be involved in the distribution of controlled substances at that late date.

[10]Given this assumption, it is not necessary for the Court to address the Defendant's arguments concerning the admissibility of his wife's testimony about what he had said on February 8, 1998.

- 9 -

into the United States from Lebanon with Qabazard and Houssam and that he has failed to present evidence that he had communicated his abandonment of the enterprise and its goals to those individuals. In response, the Defendant argues that his activities with Qabazard and Houssam were part of a different conspiracy than the one with which he has been charged, i.e., a conspiracy with Keaton relating to the distribution of cocaine.

Even though Rouphael is charged with conspiring to distribute and to possess with intent to distribute both heroin and cocaine, it is not necessary, for purposes of ruling upon Defendant's oral request to dismiss this prosecution on the basis of the statute of limitations, to decide whether that charged conspiracy encompasses Defendant's activities with Qabazard and Houssam, as well as his actions with Keaton. The Court will assume for present purposes that the Defendant was only involved in a cocaine distribution conspiracy with Keaton and others.[11]

However, Jabra and Stepp were two of the others who participated in the conspiracy to distribute cocaine with the Defendant and Keaton. Jabra, who resided in the Los Angeles area, supplied at least some of the cocaine which was distributed. The Defendant had introduced Jabra to Keaton. Stepp traveled on a number of occasions to Los Angeles in order to obtain cocaine which some of his

---

[11]Under that assumption, Qabazard and Houssam would not have been co-conspirators of Rouphael in the charged conspiracy, and his failure to communicate his abandonment of the enterprise to those individuals would not prevent the Court from concluding that the Defendant withdrew from the charged conspiracy more than five years before the Indictment was returned.

co-conspirators would distribute in the Dayton area.[12] The Defendant accompanied Stepp on some of those trips. Quite simply, the Defendant failed to present any evidence establishing that he communicated to either Jabra or Stepp that he had abandoned the cocaine distribution conspiracy.

In sum, assuming that the Indictment is limited to a conspiracy to distribute cocaine, which included, inter alia, Rouphael, Keaton, Stepp and Jabra, and that the Defendant communicated his abandonment of that conspiracy to Keaton, the evidence causes the Court to find that he failed to communicate such information to Jabra and/or Stepp. Consequently, Rouphael did not meet his burden of demonstrating that he withdrew from the conspiracy more than five years before the Indictment was returned, and this prosecution is not barred by the statute of limitations. Accordingly, the Court overrules Defendant's Oral Motion to Dismiss on the basis of the statute of limitations.[13]

December 22, 2005

                                               /s/ Walter Herbert Rice
                                               WALTER HERBERT RICE, JUDGE
                                               UNITED STATES DISTRICT COURT

---

[12] Stepp may well be the individual identified in the Indictment os "cooperating co-conspirator one" or "CC1."

[13] Given that the parties have agreed that the question of whether the prosecution of Rouphael is barred by the statute of limitations presented a legal question for the Court to resolve, regardless of the number of factual findings which must be made in order to resolve that legal issue (Transcript of June 6, 2005, Evidentiary Hearing (Doc. #95) at 20-21), the Court's decision herein has resolved that issue with finality, leaving no role for the jury in the event that there is a jury trial in this prosecution.

- 13 -

Copies to:

J. Richard Chema, Esq.
David H. Landon, Esq.
Dennis A. Lieberman, Esq.